**AFFIDAVIT**

I, Todd I. Richards, depose and state as follows:

1.  I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately sixteen years. I am presently assigned to the Lowell, Massachusetts Resident Agency and investigate bank, white collar, violent and terrorism related crimes.

2.  I am aware based on my training and experience that Title 18, United States Code, Section 2113(b) makes it a criminal offense among other things for anyone to take or carry away any thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of a bank. Having so stated, I submit this affidavit in support of a criminal complaint charging two individuals, Brian Matthew Todd ("Brian Todd") and Shaun William Todd ("Shaun Todd") with bank larceny in violation of 18 U.S.C. §§2113(b) and 2.

3.  The information set forth in this affidavit is based on my own investigation as well as information provided by others. In submitting this affidavit, however, I have not included each and every fact known to me about the investigation, but only those facts that I believe are sufficient to establish probable cause to believe that Brian and Shaun Todd have committed bank larceny in violation of the statutes.

4.  There is an automated teller machine (ATM) located at 223 Lowell Street in Wilmington, Massachusetts. As of October

16, 2000, the ATM was owned and controlled by Fleet Bank, a bank which at all times was insured by the Federal Deposit Insurance Corporation.

5. I am aware based on my investigation that Fleet Bank contracted with Brinks Armored Car, Inc. ("Brinks"), to service this ATM. Among other things, Brinks was responsible for routinely refilling the ATM with cash and postal stamps. To do this, a Brinks employee would enter a door at the rear of the ATM and then open and place the items in a "drop safe" located in the rear of the ATM. Because the rear area of the ATM was protected by both a lock on the door and an alarm, and because the safe was locked as well, Fleet Bank provided Brinks with a key to unlock the door, a code to deactivate the alarm, and the combination to the safe. When the Brinks employee left, s/he would reactivate the alarm. Similarly, Fleet Bank employees also had a key and access code to enter the rear area and gain access to the drop safe.

6. In order to track who was actually entering the rear area, Fleet Bank installed a camera. The camera fed into a videocassette recorder with a hidden button known only to Fleet Bank officials; the button needed to be pushed in order for the cassette to eject. In addition, the access code that the Brinks employees used was different than the one that Fleet Bank employees used. A computer kept a log of when the alarm was deactivated and reactivated so that one could determine whether

it was a Brinks or Fleet Bank employee who entered the rear area, and at what time they entered.

7. On October 16, 2000, at approximately 8:20 a.m., a Brinks employee accessed the rear area of the ATM and placed $100,000 in United States currency in denominations of 10 and 20 dollar bills in the safe; the employee then left. Then, at approximately 11:56 a.m., someone again entered the rear area and deactivated the alarm using a Brinks access code. At approximately 11:59 a.m., the person left and the alarm was reactivated. Fleet Bank employees entered the rear area at approximately 1:42 p.m. to remove deposits and to put money from the safe into the ATM. When they opened the safe, however, they discovered that the money was gone. Given that the only entry into the rear area between 8:20 a.m. and 1:42 p.m. was the one that occurred at 11:56 a.m., it is almost certain that the person who entered at that time took the money that was in the drop safe.

8. Fleet Bank officials subsequently contacted local law enforcement officials and the FBI. A number of things quickly led officials to suspect that the person who took the money was connected to Brinks. First, there was no damage to the door or to the drop safe, indicating that the person had the key, access code and combination needed to gain access to the safe. Further, even though Brinks officials stated that no one from Brinks was supposed to, or authorized to enter the rear of the ATM at 11:56

a.m., the alarm was deactivated by someone using a Brinks access code. Further still, the person knew of the security camera but not of the hidden button needed to eject the cassette and, as a result, simply took the whole recorder.

9. Law enforcement officials learned that Brian Todd had been a Brinks employee until September 20, 2000, approximately six weeks before the October 16th ATM theft. According to Brinks officials, Brian Todd's responsibilities had included servicing the Fleet Bank ATM at 223 Lowell Street and he thus had the keys, access code and safe combination necessary to enter the rear of the ATM and gain access to the drop safe. Brinks officials stated that Brian Todd did not, as far as they knew, return the keys when he left Brinks, and I am aware based on my investigation that the alarm code and combination to the drop safe at the Fleet Bank ATM had not changed since Brian Todd left his employment with Brinks.

10. Law enforcement officials subsequently reviewed ATM records and were able to contact a customer who had used the ATM around noon on October 16, 2000. The customer stated that s/he observed a white male coming from the rear of the ATM and walking to a black Isuzu Rodeo SUV. The customer stated that the man was carrying a canvas type tote bag and described him as six feet tall, slender, and in his late twenties. Brian Todd is a white male, was 24 at the time of the theft, and has a build that is generally consistent with the witness's description. The

customer also observed another male sitting in the driver's seat of the SUV.

11. I am aware based on my investigation that Brian Todd's brother, Shaun Todd, owned a black Isuzu Rodeo SUV as of October 16, 2000. I am further aware that on October 19, 2000, three days following the ATM theft, Shaun Todd purchased a 1997 Nissan Maxima SE from Rockingham Toyota, Dodge, Nissan, Incorporated, in Salem, New Hampshire, and traded in his black Isuzu Rodeo.

12. Law enforcement agents subsequently interviewed Brian and Shaun Todd separately and each denied any involvement in the ATM theft. Brian Todd acknowledged that he still had certain Brinks related items in his possession, including some keys unrelated to the Fleet Bank ATM and a working Nextel telephone, but he stated that he had returned everything relating to the Fleet Bank ATM. As noted above, however, Brinks officials did not have any records confirming that Brian Todd had returned any keys to the Fleet Bank ATM.

13. Law enforcement officials subsequently interviewed Shaun Todd's then girlfriend, Taryn Tinkham. Ms. Tinkham had been present with Shaun Todd when he was interviewed and denied any involvement in the theft. Ms. Tinkham stated, among other things, that she was aware that Brian Todd had worked for Brinks. She also stated that she was aware that Brian Todd gave Shaun Todd a large sum of cash, approximately, $20,000, during the fall of 2000. She further stated that Brian Todd always seemed to

have a significant amount of money and that no one knew or asked where it came from.

14. As part of our investigation, we obtained and reviewed evidence relating to Brian Todd's spending habits around the time of the October 16, 2000 ATM theft. Among other things, on October 21, 2000, Brian Todd had $9,000 worth of audio equipment installed in his 2001 Ford Escape, by Pro Sound, Division of Martan, Inc., in Salem, New Hampshire. Then on October 23, 2000, Brian Todd had $4,198.97 worth of work done on a 1997 Dodge Dakota pick up truck, all of which he paid for in cash. A salesman at Pro Sound advised that Brian Todd wanted the work on his Ford Escape to be completed in one night and he gave the salesman and another employee each a $1,000 tip, all in 20 dollar bills, to ensure it was done. This is notable because much of the $100,000 taken in the ATM theft consisted of 20 dollar bills.

15. Our investigation also revealed that in December of 2000, Brian Todd and his wife Crystal bought from a Keith Gage of Merrimac, Massachusetts, a 1996 utility trailer for $500, and two 1996 Polaris ski mobiles, for $7,500. Mr. Gage stated that he believed that Brian Todd paid for these items in cash.

17. Law enforcement officials subsequently re-interviewed Shaun Todd's girlfriend, Taryn Tinkham, in April of 2001. She told them that, subsequent to her first interview, Shaun Todd made statements to her regarding his and Brian Todd's involvement in the October 16, 2000 ATM theft. More specifically, she stated

that Shaun Todd told her that he drove Brian Todd to the ATM in his black Isuzu Rodeo. Shaun Todd then waited in the SUV while Brian Todd, wearing his Brinks jacket, used a key to enter the back of the ATM, and took approximately $100,000. Ms. Tinkham also stated that, some weeks following the robbery, Brian Todd gave her and Shaun Todd a total of $1,000, all in 20 dollar bills, to babysit Brian and Crystal Todd's children while they vacationed for a week in Florida. On another occasion, around December of 2000 or January of 2001, Ms. Tinkham stated that she was at Shaun Todd's house and saw approximately $6,000 in cash, again in 20 dollar bills, stuffed in 8 to 10 envelopes each filled with $500. According to Ms. Tinkham, Shaun Todd told her that he was holding the money for Brian Todd, because Brian Todd did not like using banks, and would disburse money to Brian Todd at his request.

18. Based on the foregoing, I have probable cause to believe that Brian M. Todd and Shaun W. Todd, on October 16, 2002, committed bank larceny in violation of Title 18, United States Code, Sections 2113(b) and 2, by taking over $1,000 belonging to, or in the care, custody, management or control of the Fleet Bank ATM located at 223 Lowell Street, Wilmington, Massachusetts.

TODD I. RICHARDS
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn before me this 5th day of March, 2004, in Boston, Massachusetts.

JUDITH GAIL DEIN
United States Magistrate Judge